**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

<u>DOCUMENT FILED ELECTRONICALLY</u>

JOHN WELCH,                                    :

:   Civil No. 09-cv-04400

      Plaintiff,                          :

v.                                             :

UNITED PARCEL SERVICE, INC. d/b/a              :
UPS,                                           :

      Defendant.

---

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT UNITED PARCEL SERVICE, INC.'S
MOTION FOR SUMMARY JUDGMENT

---

Wendy Johnson Lario
Day Pitney LLP
7 Times Square
New York, New York 10036
(212) 297-2451

Attorneys for Defendant
United Parcel Service, Inc.

Return date:

Oral Argument Requested

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS.....................................................................................2

ARGUMENT.......................................................................................................3

I.   SOME OF PLAINTIFF'S CLAIMS ARE TIME-BARRED BY FEDERAL, STATE AND CITY STATUTES OF LIMITATION ......................................3

II.  PLAINTIFF CANNOT SUSTAIN A DISABILITY DISCRIMINATION CLAIM UNDER THE ADA..................................................................4

     A.   Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination ...................................................................4

          1.   Plaintiff Does Not Have an Actual "Disability" Under the ADA.............5

          2.   Plaintiff Does Not Have a Record of Disability.....................................10

          3.   Plaintiff Cannot Prove the Third Element of His *Prima Facie* Case .......11

          4.   The Undisputed Facts Demonstrate that Plaintiff Did Not Suffer an Adverse Employment Action Because of His "Disability.......................14

III. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS AS A MATTER OF LAW...................................................................15

     1.   Plaintiff Cannot Establish a *Prima Facie* Case .................................15

     2.   UPS Accommodated Plaintiff's Medical Restrictions.........................16

     3.   Plaintiff Defied UPS' Instructions to Work Within His Medical Restrictions ...................................................................20

     4.   Peak Season Assignments .................................................22

IV.  PLAINTIFF'S DISABILITY-BASED HARASSMENT CLAIM FAILS AS A MATTER OF LAW...................................................................23

V.   PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS MUST BE DISMISSED FOR THE SAME REASONS AS HIS ADA CLAIMS .................................25

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albertson's Inc. v. Kirkingburg,*
 527 U.S. 555 (1999) ...................................................................................................5

*Allmond v. Akal Sec. No.*,
 2007 U.S. Dist. LEXIS 72713 (M.D. Ga., Sept. 28, 2007) ...................................12

*Amos v. Quebecor Printing*,
 1997 U.S. Dist. LEXIS 6688 (E.D.N.Y. Apr. 28, 1997).........................................11

*Baerga v. Hosp. for Special Surgery*,
 2003 U.S. Dist. LEXIS 17201 (S.D.N.Y. Sept. 30, 2005) ....................................11

*Bielski v. Green et al.*
 2009 674 F. Supp. 2d 414 (W.D.N.Y. 2009).................................................16, 20

*Borkowski v. Valley Central School District*,
 63 F.3d 131 (2d Cir. 1995) ....................................................................................12

*Bresloff-Hernandez v. Horn*,
 2007 U.S. Dist. LEXIS 71257 (S.D.N.Y. Sept. 25, 2007) ....................................25

*Burgos v. City of Rochester,*
 2003 U.S. Dist. LEXIS 22454 (W.D.N.Y. Mar. 31, 2003) ...................................10

*Burns v. Cook*,
 458 F. Supp. 2d 29 (S.D.N.Y. 2006) ........................................................................3

*Colwell v. Suffolk Co. Police Dep.*,
 158 F.3d 635 (2d Cir. 1998) .......................................................................8, 10, 11

*Coulson v. Goodyear Tire & Rubber Co.*,
 31 F. App'x 851 (6th Cir. 2002) ..........................................................................24

*Criado v. IBM Corp.*,
 145 F.3d 437 (1st Cir. 1998)...............................................................................21

*Crosland v. City of New York*,
 140 F. Supp. 2d 300 (S.D.N.Y. 2000) ......................................................................3

*Edwards v. Brookhaven Science Assoc.*,
 LLC, 390 F. Supp. 2d 225 (E.D.N.Y. 2005)..........................................................23

*EEOC v. Yellow Freight System, Inc.*,
    2002 U.S. Dist. LEXIS 16826 (S.D.N.Y. Sept. 9, 2002) ...................................12

*Fink v. NY Dept. of Personnel*,
    53 F.3d 565 (2d Cir. 1995) .................................................................................16

*Galabya v. New York City Bd. of Ed.*,
    202 F.3d 636 (2d Cir. 2000) .........................................................................14, 15

*Garcia v. Dep't of Corr. Servs.*,
    2006 U.S. Dist. LEXIS 89061 (S.D.N.Y. Dec. 5, 2006) ......................................9

*Gentile v. Potter*,
    509 F. Supp. 2d 221 (E.D.N.Y. 2007).............................................................6, 10

*Gilbert v. Frank*,
    949 F.2d 637 (2d Cir. 1991) ...............................................................................13

*Godfrey v. N.Y. City Transit Auth.*,
    2006 U.S. Dist. LEXIS 60985 (E.D.N.Y. Aug. 25, 2006) ..................................14

*Harris v. Forklift Sys.*,
    510 U.S. 17 (1993)...............................................................................................24

*Hendler v. Intelecom USA, Inc.*,
    963 F. Supp. 200 (E.D.N.Y. 1997).................................................................23, 25

*Jenkins v. Northwood Rehab. & Extended Care Facility*,
    267 F. Supp. 2d 282 (N.D.N.Y 2003) .................................................................13

*Jeseritz v. Potter*,
    282 F.3d 542 (8th Cir. 2002) ...........................................................................24

*Kemer v. Johnson*,
    990 F. Supp. 677 (S.D.N.Y. 1995)......................................................................16

*Kirkendall v. United Parcel Serv., Inc.*,
    964 F. Supp. 106 (W.D.N.Y. 1997) .....................................................................10

*Konipol v. Restaurant Assocs.*,
    2002 U.S. Dist. LEXIS 22439 (S.D.N.Y. Nov. 19, 2002)...................................24

*Lambert v. Genesee Hosp.*,
    10 F.3d 46 (2d Cir.1993) .......................................................................................3

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ...............................................................................................4

*Liss v. Nassau Cnty,*
    425 F. Supp. 2d 335 (E.D.N.Y. 2006) ...................................................................4

*Lovejoy-Wilson v. NOCO Motor Fule, Inc.,*
    263 F.3d 208 (2d Cir. 2001) ..............................................................................14

*McBride v. BIC Consumer Prods. Mfg. Co.,*
    583 F.3d 92 (2d Cir. 2009) ................................................................................15

*Mitchell v. Washingtonville Cent. School Dist.,*
    992 F. Supp. 395 (S.D.N.Y.), *aff'd*, 190 F.3d 1 (2d. Cir. 1999) ...........................14

*Needle v. Alling & Cory, Inc.,*
    88 F. Supp. 2d 100 (W.D.N.Y. 2000) .................................................................14

*Parisi v. Coca-Cola Bottling Co.,*
    995 F. Supp. 298 (E.D.N.Y. 1998).......................................................................5

*Plourde v. Snow,*
    2006 U.S. Dist. LEXIS 96040 (E.D.N.Y. June 24, 2006) ....................................12

*Ragusa v. Malverne Union Free Sch. Dist.,*
    381 Fed. Appx. 85 (2d Cir. 2010) ......................................................................23

*Reeves v. Johnson Controls World Services, Inc.,*
    140 F.3d 144 (2d Cir. 1998) ................................................................................5

*Schroeder v. SCCC, et al.,*
    2009 WL 1748869 (E.D.N.Y. 2009) ................................................................8, 16

*Shannon v. New York City Transit Auth.,*
    332 F.3d 95 (2d Cir. 2003) ...............................................................4, 12, 14, 20

*Skinner v. City of Amsterdam,*
    2010 U.S. Dist. LEXIS 30539 (N.D.N.Y March 30, 2010) ............................23, 24

*Stuevecke v. The New York Hospital Medical Center of Queens,*
    2003 U.S. Dist. LEXIS 14793 (E.D.N.Y. 2003).....................................................3

*Taylor v. Lenox Hill Hosp.,*
    2003 U.S. Dist. LEXIS 5429 (S.D.N.Y. Apr. 2, 2003) ...........................................6

*Toyota Motor Mfg., Kentucky, Inc. v. Williams,*
    534 U.S. 184 (2002) ...........................................................................................5

*Treglia v. Town of Manlius,*
    313 F.3d 713 (2d Cir. 2002) ..............................................................................14

*Trobia v. Henderson*,
   315 F. Supp. 2d 322 (W.D.N.Y. 2004)................................................................20

*Villanti v. Cold Spring Harbor Central School District*,
   2010 U.S. Dist. LEXIS 85806 (E.D.N.Y. Aug. 20, 2010) ....................................5

*Vinokur v. Sovereign Bank*,
   701 F. Supp. 2d 276 (E.D.N.Y. 2010)................................................................25

*Violette v. International Bus. Machs. Corp.*,
   1997 U.S. App. LEXIS 13823 (2d Cir. 1997) ....................................................13

*Wernick v. Federal Reserve Bank of NY*,
   91 F.3d 379 (2d Cir. 1986) ................................................................................16

*White v. Sears, Roebuck & Co.*,
   2009 U.S. Dist. LEXIS 35554 (E.D.N.Y. Apr. 27, 2009) .....................................4

**STATUTES**

29 C.F.R. § 1630.2(k) ................................................................................................10

42 U.S.C. § 12012(2)(A) ..............................................................................................5

42 U.S.C. § 12102(2) (2000) .......................................................................................5

42 U.S.C. § 12102(2)(B) ............................................................................................10

42 U.S.C. § 12111(8) .................................................................................................12

Local Rule 56.1........................................................................................................2, 7

N.Y. Exec. Law § 292(21)..........................................................................................25

## PRELIMINARY STATEMENT

Defendant, United Parcel Service, Inc. ("UPS"), submits this Memorandum of Law in Support of its Motion for Summary Judgment.  This lawsuit was filed by plaintiff, John Welch, a current UPS employee.  Plaintiff claims that UPS discriminated against him on the basis of his disability, failed to accommodate his disability and subjected him to a hostile working environment in violation of the Americans with Disabilities Act ("ADA").  Plaintiff alleges the same discrimination based on disability under the New York State (NYSHRL) and City Human Rights Laws (NYCHRL). Plaintiff also alleges a claim of retaliation under the NYSHRL.  None of plaintiff's claims can survive this motion.

Plaintiff has suffered from hypertrophic cardiomyopathy ("HCM"), sleep apnea, restless leg syndrome, bi-polar disorder and post-traumatic stress disorder ("PTSD"). Yet, he admits that none of these impairments, individually or collectively, limited any of his major life activities. Therefore, plaintiff is not disabled under the ADA. Additionally, all claims brought under the ADA based on alleged acts of discrimination prior to December 1, 2007 are time-barred.

In terms of accommodations, plaintiff made three requests for accommodation. In each and every instance, UPS engaged in the interactive process and granted plaintiff's requests with modified or different job positions that fully complied with his restrictions and had no impact on his pay or benefits. UPS has literally accommodated plaintiff for over five years, since 2005.

In 2005, due to his HCM, plaintiff requested a 30-pound lifting restriction, light duty and avoiding extreme exertion. After meeting with plaintiff to discuss his restrictions, UPS accommodated plaintiff by placing him in the position of Comprehensive Health and Safety Program ("CHSP") supervisor and relieving him from any lifting requirements. Plaintiff admitted at his deposition that this position met his medical restrictions and that he considered his 2005 request for accommodation granted.

In 2007, while still being accommodated for his HCM condition, plaintiff requested no overnight shifts and an 8 hour limit to his work days due to sleep apnea.  Plaintiff also modified his lifting restriction from 30 to 40 pounds.  Plaintiff stated that his sleep apnea was a temporary

1

condition that would not require a long-term accommodation. UPS fully accommodated plaintiff's revised lifting restriction and granted him no overnight shifts and the 8 hour per day limit during his testing and treatment for sleep apnea.

In 2010, while still being accommodated with a lifting restriction, plaintiff requested a change in his lifting restriction from 40 to 20 pounds. UPS again worked with plaintiff to find a position that met his medical restrictions. UPS accommodated plaintiff by offering him a position as a PAS supervisor – a position which plaintiff accepted and remains in today.

Every time plaintiff requested an accommodation, UPS accommodated him. In some instances, UPS actually created a position to meet plaintiff's needs. Plaintiff himself acknowledged that UPS "tailor made" a job for him. Accordingly, plaintiff's federal, state and city claims must be denied because UPS fully accommodated plaintiff's medical restrictions.

In addition, plaintiff has not suffered any adverse employment action. He has never been terminated, demoted, or had any reduction in his pay or bonus. In fact, plaintiff has received annual merit pay *increases* each year of his employment, as well as a bonus. UPS has given (and continues to give) plaintiff every opportunity to be successful within the Company and to work within his medical restrictions. For this additional reason, the discrimination and retaliation claims under federal, state and city law must be dismissed.

In sum, plaintiff has failed to create any issues of fact with respect to his disability, his accommodations or any adverse employment action, warranting dismissal of his Complaint in its entirety as a matter of law.

## <u>STATEMENT OF FACTS</u>

A full recitation of the relevant facts are set forth in Defendant's Statement of Material Facts ("SOMF"), previously filed pursuant to Local Rule 56.1.

**ARGUMENT**

**I.      SOME OF PLAINTIFF'S CLAIMS ARE TIME-BARRED BY
FEDERAL, STATE AND CITY STATUTES OF LIMITATION**

"[A]n aggrieved party must file a charge of discrimination with the EEOC . . . within 300 days of the alleged act of discrimination. *Burns v. Cook*, 458 F. Supp. 2d 29, 43 (S.D.N.Y. 2006) (*citing* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a)). "If these procedural requirements are not met, the action must be dismissed as untimely. *Burns*, 458 F. Supp. 2d at 43. Likewise, both the NYSHRL and NYCHRL maintain a three-year statutes of limitations. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 59 (2d Cir.1993).

Plaintiff filed his charge of discrimination with the EEOC on September 26, 2008.  He filed his lawsuit on October 14, 2009.  (Affirmation of Wendy Johnson Lario ("Lario Aff."), Ex. 65). Under the ADA, plaintiff can only pursue claims for discrete actions that occurred within 300 days prior to the filing of his charge or December 1, 2007.  For his state and city law claims, plaintiff can only pursue discrete actions that occurred within three years of the filing of his Complaint or October 14, 2006.

Plaintiff complains of two acts of alleged discrimination that are time-barred: (1) his August 2000 demotion; and (2) denial of his 2005 request for accommodation. These are both discrete acts of discrimination. *See Stuevecke v. The New York Hospital Medical Center of Queens*, 2003 U.S. Dist. LEXIS 14793, *9-10 (E.D.N.Y. 2003)[1] (failure to provide reasonable accommodation for an otherwise-qualified employee with a disability is a discrete act); *Crosland v. City of New York*, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2000) (demotions are discrete acts which do not constitute a continuing violation). These allegations both occurred prior to the limitations periods under the ADA, as well as the NYSHRL and NYCHRL. Accordingly, both are statutorily time-barred.

Plaintiff also alleges several time-barred statements made by his former manager Cindy Miller in 2000, and a subsequent manager, Tom Cucce in 2005. (*See* SOMF, ¶¶ 197-203)  These

---

[1]  A copy of this Opinion is attached as Exhibit 66 to the Lario Aff.

statements occurred prior to October 14, 2006, the earliest limitations period, and are also time-barred under federal, state and city law.  Moreover, neither Ms. Miller nor Mr. Cucci were plaintiff's managers during the limitations periods. Therefore, no comments or actions could have been made by either one of them within the limitations periods. Thus, the alleged discriminatory comments by Mr. Cucci and Ms. Miller are so far removed and disconnected from plaintiff's timely allegations of alleged harassment that no continuing violation can be said to exist.  *See Liss*, 425 F. Supp. 2d at 340 ("[t]o qualify as a series of related acts, the events. . .must not be isolated and sporadic outbreaks of discrimination, but a dogged pattern").

## II.  PLAINTIFF CANNOT SUSTAIN A DISABILITY DISCRIMINATION CLAIM UNDER THE ADA

Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by demonstrating that (1) his employer is subject to the requirements of the ADA[2]; (2) he is disabled under the ADA; (3) he is qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of disability.  *Shannon v. New York City Transit Auth*., 332 F.3d 95, 99 (2d Cir. 2003).  Plaintiff's disability discrimination and failure to accommodate claims under the ADA must be dismissed as a matter of law because plaintiff does not have a disability within the meaning of the ADA, was not otherwise qualified for the relevant job positions, and did not suffer any adverse employment action.

### A.  Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination.

Pursuant to the ADA, an individual is considered "disabled" if (1) he has a physical or mental impairment which substantially limits one or more of his major life activities, (2) he has a record of such an impairment, or (3) he is regarded by his employer as having such an

---

[2] This action is governed principally by the ADA, not the ADA Amendments Act of 2008 ("ADAAA"). The ADAAA took effect January 1, 2009. All claims and accommodation requests prior to January 1, 2009 occurred before enactment of the ADAAA.  The ADAAA is silent on any retroactive effect and, therefore, its amendments must be utilized on a prospective basis only. *See Landgraf v. USI Film Products,* 511 U.S. 244 (1994) (where Congress did not explicitly provide for retroactive application of the Civil Rights Act of 1991 it is presumptively prospective only). *See also White v. Sears, Roebuck & Co.*, 2009 U.S. Dist. LEXIS 35554, *8 (E.D.N.Y., Apr. 27, 2009) (holding that ADAAA should not apply to conduct prior to the effective date of the statute).

impairment. 42 U.S.C. § 12102(2) (2000). Plaintiff alleges that he was discriminated against based on an actual disability and a record of disability. (Lario Aff., Ex. 68). Plaintiff does not allege that UPS regarded him as disabled.

### 1.    Plaintiff Does Not Have an Actual "Disability" Under the ADA.

Plaintiff has identified certain "impairments" within the meaning of the ADA from which he suffers, including HCM, restless leg syndrome, sleep apnea, bi-polar disorder and post-traumatic stress disorder ("PTSD"). However, the ADA requires more than the diagnosis of an impairment to consider an individual "disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). Rather, to establish an actual disability under the ADA plaintiff must establish that he suffers from a "physical or mental impairment which substantially limits one or more of the major life activities[.]" 42 U.S.C. 12012(2)(A). The ADA requires those "claiming the Act's protection. . .to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience. . .is substantial." *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working." *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 150 (2d Cir. 1998) (citing 29 C.F.R. § 1630.2(i)). To survive summary judgment on this issue, plaintiff "must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence." *Villanti v. Cold Spring Harbor Central School District*, 2010 U.S. Dist. LEXIS 85806, *16 (E.D.N.Y. Aug. 20, 2010)[3]. None of plaintiff's impairments "substantially limit" any "major life activities."

Here, plaintiff does not even allege that he is substantially limited in any major life activity. Rather, his Amended Complaint makes the bare assertion that he is a "qualified individual with a disability". (Lario Aff., Ex. 68, at 2). This is insufficient to establish a disability under the ADA. *See Parisi v. Coca-Cola Bottling Co.,* 995 F. Supp. 298, 302 (E.D.N.Y. 1998) (plaintiff cannot rely upon conclusory allegations of a limitation, but must demonstrate a factual

---

[3]  A copy of this Opinion is attached as Exhibit 69 to the Lario Aff.

basis to support a finding of substantial limitation).    The undisputed material facts demonstrate that plaintiff's impairments do not substantially limit any major life activity.

**HCM:** Plaintiff testified at his deposition that the only thing he cannot do as a result of his HCM is lift packages in excess of his restricted weight and not exceed his hours/shift limits. (Deposition of John Welch ("Pl's Dep."), 81:24-82:10)[4].  Plaintiff went on to testify:

> Q. Anything else in your life that you can't do, because of the HCM?
> A. No.

(Pl's Dep., 82:8-10). A lifting restriction does not constitute a disability under the ADA and plaintiff's inability to lift packages in excess of 40 pounds (prior to 2010) does not significantly limit his ability to lift.  *See Gentile v. Potter*, 509 F. Supp. 2d 221, 237 (E.D.N.Y. 2007) (inability to lift over 10 pounds does not constitute a substantial limitation); *Taylor v. Lenox Hill Hosp.,* 2003 U.S. Dist. LEXIS 5429 (S.D.N.Y. Apr. 2, 2003)[5] (plaintiff's 40 pound lifting restriction is not a disability under the ADA and the inability to lift such weight is not a substantial limitation). Consistent with his testimony, in a visit to his treating physician Dr. Sherrid on July 10, 2007, plaintiff reported "none" or "very little" effects from his HCM on items such as: relating to family and friends (no effect), making him fatigued (very little effect), making his working to earn a living difficult (no effect), making recreational pastimes, sports or hobbies difficult (no effect), and making him short of breath (very little effect).  (Lario Aff., Ex. 3).

Dr. Sherrid testified that plaintiff's only limitations from HCM were that he should avoid repetitive lifting and "extremes of exertion."  (Deposition of Mark Sherrid ("Sherrid Dep.")[6], 21:19-22:12; 24:16-25). Dr. Sherrid also testified:

> Q. So other than avoiding the extremes of exertion that we had talked about are there any other ways in which you believe Mr. Welch is limited by his HCM?
> A. I told him to avoid repetitive lifting. I didn't think that was a good idea.
> Q. Can you think [of] a job that Mr. Welch can't perform because of his HCM?

---

[4] The relevant pages of plaintiff's deposition are attached as Exhibit 67 to the Lario Aff.
[5] A copy of this decision is attached as Exhibit 70 to the Lario Aff.
[6] The relevant pages of Mark Sherrid's deposition are attached as Exhibit 73 to the Lario Aff.

> A. Repetitive lifting and driving. Driving a commercial vehicle. He can drive. He shouldn't drive a commercial vehicle.

(Sherrid Dep., 24:16-25:3). Even when Dr. Sherrid was asked why the restriction changed from 30 pounds in 2005 to 40 pounds in 2007 his response was, "I don't know." (Sherrid Dep., 32:4-8). Dr. Sherrid also testified that plaintiff complained of exhaustion which prompted him to recommend a maximum 8-hour shift. (Sherrid Dep., 32:9-11). The only medical conclusion Dr. Sherrid provided to justify the necessity of this restriction was, "It *could* make the arrhythmias worse." (Sherrid Dep., 32:15-18) (emphasis added). Dr. Sherrid concluded his deposition by identifying plaintiff's current medical restrictions based upon his HCM:

> Q. What is your medical opinion of [plaintiff's] current medical restrictions as a result of his HMC?
> A. I think he shouldn't lift repetitively or at all more than 30 pounds. He shouldn't drive commercial vehicles. He shouldn't – should try to work day shift and not more than eight or nine hours.

(Sherrid Dep., 50:19-51:4). Based on the testimony of plaintiff and his treating physician, plaintiff's HCM does not substantially limit any major life activity and, therefore, is not a qualifying disability.

Plaintiff, however, attempts to create issues of fact with his Rule 56.1 SOMF by mischaracterizing the record and offering a post-hoc, post-deposition affidavit that contradicts his own sworn testimony.[7] For instance, plaintiff asserts in his Rule 56.1 statement that his HCM causes "chest pains, shortness of breath, tiredness and palpitations" "[o]n a day-to-day basis". (Plaintiff's SOMF, ¶ 7). For these propositions, plaintiff cites to page 61 of his deposition. The actual quote from page 61 of plaintiff's deposition reads:

> Q. Physically, what effects does the HCM have on you on a day-to-day basis?
> A. It could be none. It could be just sudden death. The newspaper boy running down the street throwing his newspaper, and he dies. But its limited, once diagnosed. You're limited, once diagnosed, because they don't – they know what's dangerous for you, such as lifting packages. You should received the proper sleep. Eating is, you know, its not like a normal heart illness where eating is of concern, because it doesn't effect the arteries. It's the electrical disruption.

---

[7] This affidavit still has not been produced to defendant.

(Pl's Dep., 61:11-23).  Further embellishing the record, plaintiff states that Dr. Sherrid testified that he "must lead a mostly sedentary lifestyle," citing to page 22 of Dr. Sherrid's testimony.  Dr. Sherrid's actual testimony stated:

> Q. Any other lifestyle changes you suggested?
> A. Yes.  Patients with HCM we advise to avoid extremes of exertion and we advise that they not compete in sports.
> Q. Do you know if Mr. Welch complied with those suggestions?
> A. To a large extent he did.  He tried as best he could to lead a sedentary lifestyle.

(Sherrid Dep., 22:8-17).  Unbeknownst to Dr. Sherrid, plaintiff testified that he "partakes in recreational activities" such as playing basketball, frisbee, baseball and football with his children.  (Pl's Dep., 69:22-70:23).  Plaintiff testified that he limits himself by trying not to run around too much during these sports.  (*Id.*)  Essentially, plaintiff alleges that he is limited in performing strenuous physical activities.  The Second Circuit in *Colwell v. Suffolk Co. Police Dep.*, 158 F.3d 635, 643 (2d Cir. 1998) held that "strenuous activity" such as "doing yard work, and painting and plastering" do not constitute major life activities.  Additionally, "running and jumping" have been held to not constitute major life activities within the meaning of the ADA. *Schroeder v. SCCC, et al.*, 2009 WL 1748869 (E.D.N.Y. 2009)[8].

Moreover, even if plaintiff's limitations constituted major life activities, plaintiff has not been limited in his ability to play sports. Plaintiff testified that he plays baseball for the Massapequa Pirates, an adult male amateur baseball league. (Pl's Dep., 70:24-72:5).  Contrary to his deposition testimony that he played only two or three games a season, the Massapequa Pirates' Facebook page states that plaintiff played in at least 14 games during the 2010 season. (Lario Aff., Ex. 1).  An August 14, 2010 post on the Massapequa Pirates' Facebook page noted that "John Welch had some big hits". (Lario Aff., Ex. 1, at 16). A July 11, 2010 post lists plaintiff's record for the season (thus far) as "John Welch goes to 7 wins 2 losses 1 save."  (Lario Aff., Ex. 1, at 22).  These games occurred at the same time UPS was accommodating plaintiff's lifting restrictions. The fact that plaintiff's impairments have not limited his ability to play sports

---

[8]  A copy of this Opinion is attached as Exhibit 74 to the Lario Aff.

on a competitive level belies his claim that he is limited to any significant degree. In sum, based on the testimony in the record and Dr. Sherrid's medical opinions, plaintiff's HCM does not substantially limit him in any major life activity.

**Sleep Apnea:** Similarly, plaintiff is not limited in any major life activity because of his sleep apnea.  At his deposition, plaintiff testified:

> Q. Anything you can think of that you can't do because of the sleep apnea?
> A. No.

(Pl's Dep., 81:21-23).   Plaintiff produced no evidence to suggest that his sleep apnea substantially limits any major life activity.  *See Garcia v. Dep't of Corr. Servs.,* 2006 U.S. Dist. LEXIS 89061 (S.D.N.Y. Dec. 5, 2006)[9] (dismissing plaintiff's ADA claim where he produced no evidence of limitation based upon his sleep apnea).

**Restless Leg Syndrome:** Plaintiff likewise testified that his restless leg syndrome does not limit his ability to work and, in fact, that the only limitation caused by that condition is an inability to drink caffeine.  (Pl's Dep., 84:8-86:8).

**Bi-Polar Disorder and PTSD:** Plaintiff is not substantially limited in any major life activities as a result of his bi-polar disorder or PTSD.  Plaintiff's bipolar disorder is treated with Zoloft and Depakote. (Pl's Dep., 88:8-89:5).   Plaintiff's medications completely cure the symptoms and effects of his bipolar disorder.  (Pl's Dep., 89:14-90:8).   Plaintiff's bipolar disorder does not limit any aspect of his personal life or his ability to work.  (Pl's Dep., 91:6-19). Plaintiff testified:

> Q. Does your bipolar disorder limit your ability to work anywhere else?
> A. No.
> Q. Is there anything in your personal life that you cant do because of your bipolar disorder?
> A. No.
> Q.Has your bipolar disorder in any way limited your ability to have physical activity?
> A. No.

---

[9]  A copy of this Opinion is attached as Exhibit 71 to the Lario Aff.

9

(Pl's Dep., 91:9-19).  At the same time plaintiff was diagnosed with bipolar disorder, he was also diagnosed with PTSD and depression.  (Pl's Dep., 92:10-19).  Plaintiff's treatment for his PTSD and depression are the same as his treatment for bipolar disorder.  (Pl's Dep., 92:20-22). Plaintiff admitted that he does not experience any physical effects from either the PTSD or the depression. (Pl's Dep., 93:3-5).   Neither the depression nor the PTSD limit any aspect of plaintiff's personal life or his ability to work. (Pl's Dep., 93:6-16).

On this record, plaintiff failed to establish that any of his impairments, or the cumulative effect of them, substantially limit him in lifting or any major life activity.  Consequently, plaintiff is not "disabled" under the ADA.  *See Gentile v. Potter*, 509 F. Supp. 2d 221, 237 (E.D.N.Y. 2007) (inability to lift over 10 pounds on a regular basis does not constitute a substantial limitation); *Burgos v. City of Rochester,* 2003 U.S. Dist. LEXIS 22454, 10-12 (W.D.N.Y. Mar. 31, 2003)[10] (plaintiff with an impairment that limited him from lifting up to 25 pounds, driving a car or working a 40 hour work week was not disabled under the ADA); *Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. 106, 11 (W.D.N.Y. 1997) (plaintiff could not establish a substantial limitation based upon his inability to lift packages in excess of 30 pounds, sit for periods greater than three hours or engage in certain leisure activities).

### 2.      Plaintiff Does Not Have a Record of Disability.

Plaintiff alleges that he is protected under the ADA because he has a "record of impairment."  (Lario Aff., Ex. 68). Under the ADA, an individual can be classified as have a record of disability if he can establish that he has a "history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(k). With a record of disability, "[t]he record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell.*, 159 F.3d at 645.  As discussed in Section II-A-1 above, plaintiff's impairments do not

---

[10] A copy of this opinion is attached as Exhibit 72 to the Lario Aff.

substantially limit a major life activity and, therefore, do not constitute a disability under the ADA. Accordingly, plaintiff cannot have a record of disability.

The only medical documentation provided to UPS were the notes from plaintiff's various physicians listing his medical restrictions. This paperwork, reviewed by registered nurses Wendy Marshall and Irene Gordon, stated that plaintiff had a lifting restriction, could not work shifts in excess of 8 hours and could not work overnight shifts. (Lario Aff., Exhs. 7, 12, 16 and 26). This information does not reveal any substantial limitations nor does it demonstrate that plaintiff ever was so limited. Thus, plaintiff's claim based on a record of disability fails as a matter of law. *Colwell*, 158 F.3d at 645 (dismissing record of impairment claim where the medical records "involved no greater degree of limitation of major life activities than the continuing impairments they showed"); *Baerga v. Hosp. For Special Surgery*, 2003 U.S. Dist. LEXIS 17201, at *7 (S.D.N.Y. Sept. 30, 2005)[11] ("a plaintiff's record of disability must still satisfy all three elements for proving actual disability in order to qualify him or her for ADA protection"). Specifically, the court in *Baerga* dismissed plaintiff's ADA claim noting that ". . . the medical records submitted by Plaintiff . . . do not show that [his] impairment substantially limits or has in the past substantially limited any major life activity. Thus, as with actual disability, Plaintiff's evidence cannot establish a record of disability under the ADA." The undisputed facts here also demonstrate that plaintiff had no disability and, therefore, could have no record of disability. Accordingly, his claims under the ADA must be dismissed as a matter of law.

**3.     Plaintiff Cannot Prove the Third Element of His *Prima Facie* Case.**

To establish the third element of his *prima facie* case, plaintiff must show that he is a 'qualified individual' under the ADA. *See Amos v. Quebecor Printing*, 1997 U.S. Dist. LEXIS 6688, at *12 (E.D.N.Y. Apr. 28, 1997)[12]. Pursuant to the ADA:

> The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall

---

[11]   A copy of this Opinion is attached as Exhibit 75 to the Lario Aff.
[12]   A copy of this Opinion is attached as Exhibit 76 to the Lario Aff.

be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

The plaintiff bears the burden of proving either "that he can meet the requirements of the job without assistance, or that an accommodation exists that permits him to perform the job's essential functions." *Borkowski v. Valley Central School District*, 63 F.3d 131, 138 (2d Cir. 1995). Importantly, "an employee has no right to any particular accommodation, but merely to a reasonable accommodation." *EEOC v. Yellow Freight System, Inc.*, 2002 U.S. Dist. LEXIS 16826, at *21 (S.D.N.Y. Sept. 9, 2002)[13].

An employer's determination of the essential functions of its job positions is entitled to great deference and "federal courts do not sit as a super-personnel department that re-examines an entity's business decisions." *Allmond v. Akal Sec. No.*, 2007 U.S. Dist. LEXIS 72713, at *40 (M.D. Ga., Sept. 28, 2007)[14]; *Plourde v. Snow*, 2006 U.S. Dist. LEXIS 96040, at *30 (E.D.N.Y. June 24, 2006)[15]; 42 U.S.C. § 12111(8) ("[c]onsideration shall be given to the employer's judgment as to what functions of a job are essential").

The essential functions of plaintiff's inside supervisor and on-car supervisor position include: (1) working 9-10 hours per day, 5 days per week (2) lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds; (3) ability work varying shifts and extended hours as business needs dictate; (4) work extended hours as required; and (4) assist in moving packages weighing up to 150 pounds. (Lario Aff., Ex. 64). Similarly, the essential functions of plaintiff's CHSP supervisor position include: (1) working 9-10 hours per day, 5 days per week and (2) the ability to work varying shifts and additional hours depending on service needs. (Lario Aff., Ex. 64).

Removing an essential job function is not a "reasonable accommodation" under the ADA. *Shannon*, 332 F.3d at 100 ("A reasonable accommodation can never involve the

---

[13] A copy of this opinion is attached as Exhibit 77 to the Lario Aff.
[14] A copy of this opinion is attached as Exhibit 78 to the Lario Aff..
[15] A copy of this opinion is attached as Exhibit 79 to the Lario Aff.

elimination of an essential function of a job").  Here, plaintiff is unable to meet the essential job functions required for the package inside supervisor, CHSP supervisor and on-car supervisor positions.  Plaintiff was unable to lift in excess of, first 40, then 20, pounds, or to work the requisite 9-10 hours per day or the varying shifts or extended hours as necessary. These undisputed facts render plaintiff unqualified for these positions.  *Violette v. International Bus. Machs. Corp.*, 1997 U.S. App. LEXIS 13823 (2d Cir. 1997)[16] (where plaintiff could not work more than 8 hours a day and was discharged when shift changed from 8 to 12 hour days, plaintiff was not otherwise qualified under the ADA); *Gilbert v. Frank*, 949 F.2d 637 (2d Cir. 1991) (where 70 pound lifting restriction was an essential function of a postal worker position, plaintiff was unqualified because of a lifting restriction stemming from plaintiff's kidney condition).

Plaintiff admitted during his deposition that he identified numerous essential functions of his jobs that he could not do. Plaintiff hand-marked the package inside supervisor job description and wrote "no" next to the following tasks: (1) Meet D.O.T. requirements and/or be CDL qualified as required by job assignment; (2) extended hours may be required as service needs dictate; (3) ability to work varying shifts and extended hours as business needs dictate; (4) lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds; (5) assist in moving packages weighing up to 150 pounds; and (6) grasp, reach, and demonstrate activities associated with delivery, loading and unloading packages. (Lario Aff., Ex. 80; Pl's Dep.,  273:10-25).  Plaintiff testified at his deposition that the purpose of his handwritten notes on the essential functions list was "[j]ust to validate what I can and can't do based on the essential functions listed here." (Pl's Dep., 273:21-25).  These notes, along with his own testimony, demonstrate that plaintiff was unable to perform the essential job functions and is not a "qualified individual" under the ADA.

Where a plaintiff cannot meet the essential functions of a position, the examination turns to whether any reasonable accommodation could allow plaintiff to perform the job requirements. *Jenkins v. Northwood Rehab. & Extended Care Facility,* 267 F. Supp. 2d 282, 287 (N.D.N.Y

---

[16] A copy of this Opinion is attached as Exhibit 81 to the Lario Aff.

2003).  UPS managers are required to be able to assist in the movement of packages along their routes – this is the core of UPS' business. (DiLibero Dep., 197:4-14).  When necessary, during peak season or times of operational difficulties, managers must be able to assist as needed in the handling of packages. (DiLibero Dep., 193:16-194:7).  The job duties plaintiff sought to be relieved from were the lifting and hours requirements of these positions.  (Pl's Dep., 204:20-25; 211:24-212:3).  Crucially, however, "the ADA does not require an employer to eliminate or relocate essential functions of a position in order to provide accommodation."  *Id.*   In fact, the ADA does not require an employer to restructure a position to strip it of a necessary physical component. *See Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 106 (W.D.N.Y. 2000); *Mitchell v. Washingtonville Cent. School Dist.*, 992 F. Supp. 395, 410 (S.D.N.Y.), *aff'd*, 190 F.3d 1 (2d. Cir. 1999) ("we have held . . . that individuals whose physical condition precludes them from engaging in heavy lifting, and who seek jobs for which such lifting is shown to be an essential function, need not be accommodated by shifting responsibility for the lifting to other individuals").  Accordingly, plaintiff is not a qualified individual with a disability and cannot perform the essential job functions of his previous positions with or without accommodation.

### 4.   The Undisputed Facts Demonstrate that Plaintiff Did Not Suffer an Adverse Employment Action Because of His "Disability".

To establish the final prong of his *prima facie* case, plaintiff must prove that he suffered an adverse employment action because of his disability.  *Shannon*, 332 F.3d at 99.  An adverse employment action involves "a change in working conditions [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Galabya v. New York City Bd. Of Ed.*, 202 F.3d 636, 640 (2d Cir. 2000).  There must be a materially adverse change in the terms and conditions of employment. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  The Second Circuit has included in this definition "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  *See Lovejoy-Wilson v. NOCO Motor Fule, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). Not all unpleasant incidents or "minor stumbling blocks" are considered adverse employment actions. *See Godfrey v. N.Y. City Transit Auth.*, 2006 U.S. Dist.

LEXIS 60985, 18-19 (E.D.N.Y. Aug. 25, 2006)[17] (twelve week medical disqualification from job was not an adverse employment action); *Galabya*, 202 F.3d at 640 (employer's delay in reassigning employee did not constitute an adverse employment action).

Plaintiff cannot satisfy this fourth prong because he did not suffer any adverse employment action because of his alleged disability. It is undisputed that plaintiff remains employed by UPS today. (Pl's Dep., 142:13-17). Plaintiff is currently working as a PAS supervisor, a position UPS offered to him in response to his 2010 accommodation request. (Pl's Dep., 140:11-23; 279:5-22). Plaintiff's only allegation of an adverse employment action is his demotion in August 2000. This incident, however, is plainly time barred as a discrete act. Moreover, UPS demoted plaintiff in August 2000 because of plaintiff's ultimate responsibility for a significant service failure and his refusal to accept responsibility for it. (*See* Defendant's SOMF, ¶¶ 38-45 and supporting documentation; Pl's Dep., 32:9-33:19; 120:22-121:9; 134:7-14).

Ignoring plaintiff's time-barred allegations, plaintiff suffered no adverse employment action within the relevant time period. Plaintiff received annual pay increases and his Management Incentive Program ("MIP") bonus every year of his employment. (Pl's Dep., 143:5-10). Accordingly, plaintiff cannot establish a *prima facie* case of disability discrimination and his federal claims must be dismissed.

## III.   PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS AS A MATTER OF LAW

To establish a *prima facie* case of failure to accommodate, plaintiff must demonstrate that: (1) he is a person with a disability under the meaning of federal and state law; (2) UPS had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of his job; and (4) UPS refused to make such accommodations. *McBride v. BIC Consumer Prods. Mfg. Co*., 583 F.3d 92, 97 (2d Cir. 2009).

### 1.   Plaintiff Cannot Establish a *Prima Facie* Case.

For the same reasons discussed in Section II-A, *supra*, plaintiff's failure to accommodate claim fails as a matter of law. The undisputed facts show that plaintiff suffers from *impairments*,

---

[17] A copy of this Opinion is attached as Exhibit 82 to the Lario Aff.

but not any "disability" as defined by the ADA.  It is axiomatic that if plaintiff is not disabled (which he is not), he is not entitled to the protections of the ADA.  *Schroeder*, 2009 U.S. Dist. LEXIS 52533, at *14.  Here, plaintiff does not suffer any impairments that substantially affect any major life activities.

Moreover, as discussed in Section II-A-2 above, plaintiff could not perform the essential functions of his job with or without an accommodation. Accordingly, as a matter of law, plaintiff is not "disabled" or "otherwise qualified" within the meaning of the ADA and his failure to accommodate claims must be dismissed.

### 2.     UPS Accommodated Plaintiff's Medical Restrictions.

Plaintiff's failure to accommodate claim also fails because UPS did, in fact, accommodate plaintiff's medical restrictions time and time again. Whether an employer's accommodation of an employee's alleged disability is reasonable is a fact-specific inquiry. *Bielski v. Green et al.* 2009 674 F. Supp. 2d 414, 424-425 (W.D.N.Y. 2009). An employer is not required to provide everything the "disabled" employee requests. *Kemer v. Johnson*, 990 F. Supp. 677, 686 (S.D.N.Y. 1995).  Importantly, once a reasonable accommodation has been made, the employer has fulfilled its statutory obligation.  *Fink v. NY Dept. of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995). Summary judgment is appropriate if the evidence shows that the employer provided "plainly reasonable" accommodations.  *Wernick v. Federal Reserve Bank of NY*, 91 F.3d 379, 385 (2d Cir. 1986).  Here, UPS provided (and continues to provide) plaintiff with reasonable accommodations and, as such, plaintiff's failure to accommodate claim fails as a matter of law.

**Plaintiff's 2007 Request for Accommodation:** In or around early June 2007, plaintiff reported to then-Learning and Development Manager, Michael Ridolfi, that he fell off the box line during his preload shift. (Pl's Dep., 162:16-163:7; Deposition of Michael Ridolfi ("Ridolfi Dep.")[18], 107:7-13). Plaintiff told Mr. Ridolofi that he suffered from various medical conditions and that his preload position was too strenuous and was aggravating his conditions. (Pl's Dep.,

---

[18] The relevant pages of Michael Ridolfi's deposition are attached as Exhibit 85 to the Lario Aff.

162:16-163:7; Ridolfi Dep., 120:22-121:8). Mr. Ridolfi was previously unaware of plaintiff's medical conditions or any previous request for accommodation. (Ridolfi Dep., 126:25-128:11). Mr. Ridolfi immediately told plaintiff that he needed to fill out a request for accommodation under UPS' ADA policy. (Ridolfi Dep., 107:7-13; 120:22-121:8; Pl's Dep., 212:4-11). Plaintiff's 2007 ADA accommodation request listed the following medical restrictions: (1) 40 pound lifting restriction; (2) working shift of 8 hours or less; and (3) no overnight shifts. (Lario Aff., Ex. 12). After plaintiff submitted his 2007 request for accommodation, UPS immediately returned him to a CHSP supervisor position pending the outcome of his request. (Pl's Dep., 137:12-21; 215:4-8; Lario Aff., Ex. 24). This position admittedly met plaintiff's medical restrictions. (Pl's Dep., 216:6-8).

UPS scheduled a checklist meeting with plaintiff to discuss his medical restrictions and desired accommodation. (Lario Aff., Ex. 13). During the July 26, 2007 checklist meeting, plaintiff indicated that his hours restrictions were based upon his sleep apnea and that he continued to have a lifting restriction (now 40 pounds) based upon his HCM. (*Id.*). Plaintiff also stated that his sleep apnea was a temporary condition which would likely be resolved and, therefore, he would not require a long-term accommodation of work hours. (Pl's Dep., 214:13-215:2; Ridolfi Dep., 114:5-13; Lario Aff., Exs. 15 and 24). Plaintiff's physician, Dr. Sherrid, sent UPS a letter on or around July 31, 2007 confirming plaintiff's prognosis. (Lario Aff., Ex., 16). The letter stated:

> The restriction of excessive and overnight hours is derived from the ongoing sleep problems [plaintiff] faces almost daily . . . The lifting of package and the restrictions related to any such lifting will remain in effect forever, **yet the restrictions from Mr. Welch's excessive hours shall remain in effect until he has arrived at a satisfactory sleep program derived from an extensive sleep study and adjustment of his medication**.

(Lario Aff., Ex. 16). (emphasis added).

During the pendency of plaintiff's 2007 request, UPS continued to accommodate plaintiff's hours restrictions (while continuing to honor his 2005 lifting accommodation) in his role in CHSP. (Pl's Dep., 208:7-209:14; Lario Aff., Ex. 17; DiLibero Dep., 151:4-152:3; 160:5-

23).  Plaintiff was repeatedly told by Mr. DiLibero and Mr. Rizzo to work within his medical restrictions. (Lario Aff., Ex. 17; DiLibero Dep., 151:4-152:3; 160:5-23; 161:15-162:19; 168:21-169:23; 171:11-14). Plaintiff remained in the CHSP position from approximately July 2007 through December 2007, when he went out on a medical leave of absence. (Pl's Dep., 229:12-25; 231:11-14; Lario Aff., Ex.18).

On January 4, 2008, Mr. Ridolfi confirmed with plaintiff that his sleep apnea had resolved and requested medical documentation to support that contention. (Lario Aff., Ex. 23). On January 10, 2008, UPS received a letter from plaintiff's doctor, Dr. Sherrid, stating that plaintiff was to have surgery on January 14, 2008 and, once recovered, he could work up to 10 hours per day.  (Lario Aff., Ex. 26).

Plaintiff commenced another leave of absence on January 11, 2008.  (Lario Aff., Ex. 27). Upon plaintiff's return to work, he was placed in his CHSP supervisor position working for Mr. Rizzo. (Lario Aff., Ex. 37).  Soon thereafter, plaintiff began conducting driver safety training out of UPS' Nassau facility. (Pl's Dep., 139:6-24). Chris Travaglia, plaintiff's new manager, instructed plaintiff to work within his restrictions and not to lift any packages outside of his restrictions. (Lario Aff., Ex. 39). The driver safety training position admittedly met plaintiff's medical restrictions.  (Pl's Dep., 216:6-8).  Plaintiff's official job title was "package inside supervisor," although UPS only required plaintiff to provide safety training to center drivers. (Pl's Dep., 139:6-21; 255:24-256:3). This job was admittedly created to address plaintiff's restrictions.

> Q. What was your next position?
> A. The next position, I provided safety training to drivers in the Nassau facility.
> Q. What was your official job title?
> A. I don't know if there was one, because it was kind of like tailor made for me.

(Pl's Dep., 139:6-12).

**Plaintiff's 2010 Request for Accommodation:** In or around January 2010 plaintiff made another request for accommodation under UPS' ADA policy.  (Pl's Dep., 270:12-16). At the

time of his January 2010 request, plaintiff was still conducting driver safety training.  (Pl's Dep., 255:19-256:12).  On January 11, 2010, District Occupational Health Supervisor, Irene Gordon, sent plaintiff an ADA packet in response to his request. (Lario Aff., Ex. 40).

On March 10, 2010, unbeknown to UPS, plaintiff sent Dr. Sherrid the UPS' ADA packet and told his doctor to issue the following restrictions: (1) no lifting over 40 pounds; (2) no continuous lifting; (3) no extensive working hours; (4) no working over 9 hours; (5) no requirement for a D.O.T. card; (5) shifts should be during normal business hours; and (6) a working environment conducive to his restrictions. (Lario Aff., Ex. 43). On April 12, 2010, one month later, UPS finally received plaintiff's completed ADA packet and supporting medical documentation.  (Lario Aff., Ex. 42).  The medical information provided by Dr. Sherrid indicated the following medical restrictions: (1) a 20 pound lifting restriction; (2) no operation of heavy machinery; and (3) no driving of heavy trucks.  (Pl's Dep., 271:12-272:19; Lario Aff., Ex. 44). Plaintiff's 2010 request for accommodation and supporting medical information did not contain any shift or hours restrictions.  (Pl's Dep., 272:7-16; Lario Aff., Ex. 44).

On April 23, 2010, UPS held a meeting where plaintiff identified his medical restrictions as: (1) a 40 pound lifting restriction; (2) no repetitive lifting; (3) no excess hours (9 hours max); (4) no overnight shifts; and (5) medically unable to obtain D.O.T. card.  (Lario Aff. Ex. 45). Plaintiff did not produce any medical documentation to support the hour or shift restrictions. (Pl's Dep., 272:7-16). During the meeting, UPS engaged in the interactive process with plaintiff and discussed tasks he felt he could or could not do. (Pl's Dep., 275:4-278:10).  On August 12, 2010, North Atlantic District HR Manager, Beverly Riddick, called plaintiff to discuss open jobs that met plaintiff's medical restrictions. Ms. Riddick offered plaintiff a position in UPS' Industrial Engineering department called Preload Assist Supervisor ("PAS").  (Pl's Dep., 278:16-279:22; Lario Aff., Ex. 47).   Plaintiff accepted the PAS position and started on or about September 6, 2010.  (Pl's Dep., 279:5-22; Lario Aff., Ex. 4). Plaintiff admits that the PAS

supervisor position meets his medical restrictions. (Pl's Dep., 281:13-15). Plaintiff remains in this position today. (Pl's Dep., 281:8-10).[19]

UPS went above and beyond its obligations under the ADA to accommodate plaintiff's medical restrictions and maintain his employment with the Company. UPS' accommodation of plaintiff's medical restrictions by modifying the essential functions of his job positions and tailor-making jobs within the Company was not only reasonable, but exceeded that required by law. *See Shannon*, 332 F.3d at 100 ("A reasonable accommodation can never involve the elimination of an essential function of a job"); *see also Trobia v. Henderson*, 315 F. Supp. 2d 322, 331 (W.D.N.Y. 2004) (*citing Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) ("evidence that accommodations were made so that an employee could avoid a particular task merely shows the job could be restructured, not that [the function] was non-essential. . . To find otherwise would unacceptably punish employers from doing more than the [Act] requires, and might discourage such an undertaking on the part of employers."). As such, UPS is entitled to summary judgment on plaintiff's failure to accommodate claim. *See Bielski*, 674 F. Supp. 2d at 425 ("if the evidence shows conclusively that the employer offered a reasonable accommodation, then the employer is entitled to summary judgment").

**3.    Plaintiff Defied UPS' Instructions to Work Within His Medical Restrictions.**

Plaintiff testified that UPS "tailor-made" job positions to accommodate his medical restrictions. Part of this process has included modifying plaintiff's job duties and instructing him not to lift any packages in excess of his lifting restriction and not to work any hours in excess of his shift restrictions. Recognizing its continuing obligation to accommodate plaintiff's alleged disabilities, UPS worked diligently with plaintiff when it became aware that he was working

---

[19] **2005 Request for Accommodation:** Although time-barred by the ADA, as well as the New York State and City Human Rights Laws, this claim also fails because UPS accommodated plaintiff. Plaintiff's 2005 request for accommodation listed medical restrictions of: no lifting over 30 pounds, light duty and avoiding extremes of exertion. (Pl's Dep., 207:23-208:208; Lario Aff., Ex. 7). Former UPS Workforce Planning Manager, Alma Franco, met with plaintiff to discuss his request for accommodation and medical restrictions. (Pl's Dep., 208:7-17). Following that meeting, UPS transferred plaintiff to the position of CHSP supervisor which met plaintiff's medical restrictions. (Pl's Dep., 208:7-209:14; 136:14-137:9; Lario Aff., Exhs. 4 and 8). Plaintiff admitted that UPS granted his 2005 accommodation request. (Pl's Dep., 209:2-7; Deposition of Irene Gordon ("Gordon Dep."), 69:17-23). Gordon Dep is at Lario Aff. Ex. 83.

outside of his restrictions. *Criado v. IBM Corp.*, 145 F.3d 437 (1st Cir. 1998) (noting that past accommodations do not absolve employer from providing future accommodations). Each time plaintiff brought forward new or amended restrictions, UPS worked with him to ensure that he stayed within his restrictions. Similarly, on the occasions when plaintiff made UPS aware that he was performing a task outside of his restrictions, UPS HR and management instructed plaintiff to perform only those tasks within his restrictions. For example, in 2007, plaintiff told then- District Human Resources Manger, Kevin DiLibero, that he was working beyond his hours restrictions. (DiLbero Dep., 167:19-25). Once notified, Mr. DiLibero instructed plaintiff not to work beyond his 9-hour restrictions and reminded him that he is not required to work additional hours. (DiLibero Dep., 168:25-171:14).

However, there were times when plaintiff never notified UPS management that he was working outside his restrictions. For instance, plaintiff was asked to assist in delivering packages to UPS customers. (Pl's Dep., 182:3-183:13). Plaintiff alleges that some packages exceeded his lifting restriction. (Pl's Dep., 183:7-13). However, plaintiff never objected to or notified any manager that the packages were too heavy. (Pl's Dep., 183:7-19). Plaintiff further alleges that while working as an on-car supervisor, he moved packages greater than his lifting restriction. (Pl's Dep., 186:22-25). Plaintiff testified that some days there were no packages that exceeded his lifting restriction, but, on the days when plaintiff encountered a package beyond his lifting restriction he did not notify any co-worker or supervisor. (Pl's Dep., 187:2-12).

Plaintiff admits that it is his responsibility to notify his manager if a task to which he is assigned is beyond his medical restrictions. (Pl's Dep., 185:12-16; DiLibero Dep., 86:17-23; Gordon Dep., 74:13-18). Yet, plaintiff often chose *not* to notify managers unaware of his medical restrictions and, rather, work outside his restrictions. UPS can only offer plaintiff an accommodation, it cannot force him to abide by it. When UPS was put on notice of any request to work outside plaintiff's medical restrictions, plaintiff was told to do only what he could within his restrictions. UPS fully discharged its obligations.

21

### 4. Peak Season Assignments.

UPS experiences its "peak season" from Thanksgiving to New Years each year. (DiLibero Dep., 193:16-194:7). When operational needs arise, management employees are typically asked to assist in operations. (DiLibero Dep., 197:4-14). On occasion, plaintiff and other operations managers have been asked to assist in operational projects. (Pl's Dep., 256:4-257:16). These tasks can be done within plaintiff's medical restrictions. (Pl's Dep., 175:20-176:2; 187:2-7).

During one such assignment, plaintiff informed Center Manager, Dave Mazzola, that he cannot lift any packages in excess of 40 pounds. (Pl's Dep., 260:21-261:2). Mr. Mazzola told plaintiff that if he cannot lift certain packages, then he should not pick them up. (Pl's Dep., 261:3-11). Plaintiff completed Mr. Mazzola's assignment taking only the packages that were within his lifting restriction. (Pl's Dep., 261:3-11). On another occasion, Manager Bill Kyles instructed plaintiff to have the package-car driver lift any packages that were outside of his medical restrictions. (Pl's Dep., 261:9-262:2).

During peak season 2010, Manager Roberto Charles assigned plaintiff the task of "breaking jams", which is keeping boxes moving on the conveyer belt. (Pl's Dep., 173:5-24). Upon learning of this assignment, Ms. Riddick, in Human Resources, contacted plaintiff and instructed him to work within his medical restrictions. (Pl's Dep., 174:13-24). Ms. Riddick directed plaintiff to contact her if anyone told him to work outside of his restrictions. (Pl's Dep., 174:13-175:9). After Ms. Riddick's phone call, plaintiff felt he was working too many hours and brought this to Mr. Charles' attention. (Pl's Dep., 177:2-178:14). Mr. Charles told plaintiff to do only what he felt was within his restrictions. (Pl's Dep., 177:12-178:14). This incident further demonstrated that when UPS was put on notice of any request to work outside plaintiff's medical restrictions, plaintiff was told to do only what he could within his restrictions.

### IV.    PLAINTIFF'S DISABILITY-BASED HARASSMENT CLAIM
####        FAILS AS A MATTER OF LAW

Plaintiff also alleges that he suffered disability-based harassment.  (Lario Aff., Ex. 68, at 13).  The Second Circuit has not directly addressed whether the ADA gives rise to a claim for hostile work environment. *See Edwards v. Brookhaven Science Assoc.*, LLC, 390 F. Supp. 2d 225, 230 (E.D.N.Y. 2005); *see also Ragusa v. Malverne Union Free Sch. Dist.,* 381 Fed. Appx. 85, 88 n.3 (2d Cir. 2010). "Regardless of whether the ADA does allow for a hostile work environment claim, a plaintiff suing for disability discrimination must establish a prima facie case of discrimination under the ADA." *Edwards*, 390 F. Supp. 2d at 230.

Courts that do recognize a claim for hostile work environment under the ADA use the same standards that apply to hostile work environment claims under Title VII.  *Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 208 (E.D.N.Y. 1997).  As discussed above, plaintiff cannot establish a disability discrimination case, in part, because of the statute of limitation and, in whole, because of the *prima facie* elements of a claim under the ADA.  For the same reasons, plaintiff cannot establish a claim of hostile work environment.

Plaintiff alleges the following incidents of harassment: (1) in December 2007, Mr. Ridolfi told plaintiff "the clock is ticking" with respect to his residual duty status; (2) on January 23, 2008, Mr. Ridolfi told plaintiff to "go home" until his sleep apnea and hours restrictions were resolved; (3) in October 2008, UPS suspended plaintiff's pay based upon his status on unauthorized leave; (4) on January 26, 2009, Mr. DiLibero told plaintiff "I don't have a job for someone like you."; and (5) in 2010, a message appeared on plaintiff's handheld DIAD which read "What about John Welch died." (Lario Aff., Ex. 68, at 7-12; Pl's Dep., 335:5-336:13).

To establish a hostile work environment claim, plaintiff must establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive" such that the employee's working conditions are altered and that "create an abusive working environment." *See Skinner v. City of Amsterdam*, 2010 U.S. Dist. LEXIS 30539, *31 (N.D.N.Y March 30, 2010)[20]. "The workplace must be evaluated on the totality of

---

[20] A copy of this Opinion is attached as Exhibit 86 to the Lario Aff.

the circumstances, and the court can consider factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations omitted). Plaintiff cannot sustain a hostile work environment claim upon the record in this case.

Even accepting all of plaintiff's allegations as true, nothing in this record rises to the level of "severe or pervasive." The comments alleged within the limitations period are, at best, sporadic, and not "severe or pervasive" enough to alter plaintiff's work environment. *See Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993). Likewise, the alleged isolated comments and conduct were neither humiliating nor physically threatening and did not interfere with plaintiff's work performance. *See Skinner*, 2010 U.S. Dist. LEXIS 30539, *31 (co-workers' reference to plaintiff as a "drug addict," pills taped to plaintiff's time card and employees offering him pills on a daily basis were insufficient to establish a hostile working environment); *see also Konipol v. Restaurant Assocs.*, 2002 U.S. Dist. LEXIS 22439 (S.D.N.Y. Nov. 19, 2002)[21] (improperly docking employee returning from radiation and telling her she should "just get healthy" does not amount to hostile work environment); *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) (calling plaintiff a "looney toon," "wacko," and "crazy" are not sufficient to establish hostile work environment); *Jeseritz v. Potter*, 282 F.3d 542 (8th Cir. 2002) (co-workers calling plaintiff "a cripple" did not constitute hostile work environment). Here, plaintiff's allegations do not even approach the level of severe or pervasive. As for Mr. Ridolfi's comment that "the clock is ticking," plaintiff admitted that this comment was in relation to his time on residual duty under UPS' Income Protection Plan (which only lasts for a period of six-months), not his disability. (Pl's Dep., 230:2-231:5). Plaintiff's remaining allegations of harassment are likewise exaggerated or unfounded. (*See* Defendant's SOMF, ¶¶ 195-228 and supporting documentation). Accordingly, plaintiff's claim of harassment must be dismissed as a matter of law.

---

[21] A copy of this Opinion is attached as Exhibit 87 to the Lario Aff.

## V.   PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS MUST BE DISMISSED FOR THE SAME REASONS AS HIS ADA CLAIMS

In general, disability discrimination claims under the NYHRL are subject to the same analytical framework as disability discrimination claims under the ADA. *See Bresloff-Hernandez v. Horn*, 2007 U.S. Dist. LEXIS 71257, at * 12-13 (S.D.N.Y. Sept. 25, 2007)[22] (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 at n.1 (2d Cir. 2000). The only exception is "the more expansive definition of disability in the [NYSHRL]". *Id.*[23] Plaintiff's impairments do not prevent the exercise of a normal body function, are temporary in nature or limit plaintiff in minor and insubstantial ways. In addition, plaintiff is not "otherwise qualified" for his job positions and was fully accommodated. Thus, for the reasons discussed in Sections II and III, plaintiff cannot establish a *prima facie* case under the NYSHRL. Furthermore, plaintiff's discrimination and retaliation claims under both the NYHRL and NYCHRL require him to establish that he suffered an adverse employment action. *See Hendler v. Intelecom USA*, 963 F. Supp. 200, 212 (E.D.N.Y. 1997) (NYSHRL); *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 290 (E.D.N.Y. 2010) (NYSHRL and NYCHRL). As discussed in Section II-A, plaintiff remains employed by UPS today and has suffered no actionable adverse employment action. Accordingly, plaintiff's State and City claims must be dismissed as a matter of law.

### CONCLUSION

Defendant United Parcel Service, Inc. ("UPS") respectfully requests that the Court grant its motion for summary judgment and dismiss with prejudice plaintiff's Complaint.

DAY PITNEY LLP
Attorneys for Defendant

By:      s/Wendy  Johnson Lario
WENDY JOHNSON LARIO
A Member of the Firm
Day Pitney LLP, 7 Times Square
Dated: May 16, 2011.                     New York, New York 10036 (212) 297-2451

---

[22] A copy of this Opinion is attached as Exhibit 88 to the Lario Aff.
[23] The NYSHRL defines a "disability" as a "physical, mental or medical impairment. . .which prevents the exercise of a normal body function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21).

25